IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAHONEE HAWKINS, Individually and on behalf of all others similarly situated in Missouri,<br><br>                              Plaintiff,<br>v.<br><br>NESTLE U.S.A., INC.,<br><br>                              Defendant. | Case No. 4:17-cv-205<br><br>[Circuit Court of Phelps County Case No. 16PH-CV01725]<br><br>JURY TRIAL DEMANDED |

NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Nestlé USA, Inc. ("NUSA"), through undersigned counsel, hereby removes the above-captioned action from the Circuit Court of Phelps County, Missouri, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, on the grounds that federal jurisdiction exists under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).

I.      PAPERS FROM THE REMOVED ACTION

1.      On August 21, 2014, plaintiff Lahonee Hawkins filed the removed case, *Hawkins v. Nestle U.S.A., Inc.*, No. 16PH-CV01725, in the Circuit Court of Phelps County, Missouri's Twenty-fifth Judicial Circuit, which is within the United States District for the Eastern District of Missouri, Eastern Division.  Plaintiff served the Petition on NUSA on December 14, 2016. *See* Exhibit B.

2.      In accordance with 28 U.S.C. § 1446(a), true and correct copies of the Summons, a conformed copy of the Missouri Petition, Proof of Service on NUSA, and documents filed in the state court are attached hereto as Exhibits A-E.

1

722685308

3. NUSA did not answer plaintiff's Summons and Petition in the Circuit Court for Phelps County prior to removal and is not aware of any further proceedings or filings regarding this action in that court.

## II. NATURE OF REMOVED ACTION

4. Plaintiff alleges she purchased NUSA's Raisinets candy. Plaintiff asserts that the packaging of the Raisinets violates the federal Food Drug & Cosmetic Act ("FDCA") and Missouri state law because it contains "non-functional" slack-fill. Pet., ¶¶ 3, 13-17.

5. Plaintiff asserts two causes of action: 1) violation of Missouri's Merchandising Practices Act and 2) unjust enrichment. Pet., ¶¶ 37-50.

6. Plaintiff seeks to represent the following putative class:

> "All Missouri citizens who purchased the [Rainsets] Products in the five years preceding the filing of this Petition (the 'Class Period')."

Pet., ¶ 28.

7. Plaintiff seeks damages, disgorgement, injunctive relief, restitution, pre- and post-award interest, and attorney's fees and costs. Pet., ¶¶ 4, 31, 44, 50 & Prayer for Relief.

## III. VENUE

8. Venue is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division embracing the place where the state court case was pending.

## IV. THE REMOVAL IS TIMELY

9. The removal is timely under 28 U.S.C. § 1446(b).

10. Plaintiff filed her Petition on November 18, 2016. *See* Exhibit A. Plaintiff served the Petition on NUSA on December 14, 2016. *See* Exhibit B.

11. NUSA filed this Notice of Removal within thirty (30) days of service, as required by law. *See*, *e.g.*, *Murphy Bros, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999).

V. **NOTICE TO ADVERSE PARTY AND STATE COURT**

12. Pursuant to 28 U.S.C. § 1446(d), NUSA is filing with the Clerk of the Circuit Court for Phelps County, and serving on plaintiff, a Notice of Filing of Notice of Removal. A true and correct copy of the Notice of Filing Notice of Removal is being filed concurrently herewith.

VI. **BASES FOR REMOVAL JURISDICTION**

   A. **This Court Has Jurisdiction Under CAFA**

13. CAFA confers federal jurisdiction over class actions involving: (a) minimal diversity (*i.e.*, diversity between any defendant and any putative class member); (b) at least 100 putative class members; and (c) at least $5 million in controversy, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d). Although the burden rests on the removing party to demonstrate that CAFA's jurisdictional requirements are met, the party opposing jurisdiction under CAFA bears the burden of demonstrating that any exception to CAFA jurisdiction applies. *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010). This case satisfies CAFA's requirements.

   1. **The Parties Are Minimally Diverse**

14. Plaintiff is a citizen of Missouri. NUSA is a citizen of Delaware and California. This satisfies the minimal diversity requirement.

15. Plaintiff is and has been a Missouri resident. Pet., ¶ 5. She seeks to represent a class composed of other "Missouri citizens." Pet., ¶ 28. *See Dist. of Columbia v. Murphy*, 314

U.S. 441, 455 (1941) (while residence is not the equivalent of citizenship, residence is properly taken as domicile "until facts are adduced to the contrary"); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) (residence prima facie evidence of domicile for purposes of determining citizenship).

16. A corporation is deemed to be a citizen of the state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

17. The phrase "principal place of business" "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This is the corporation's "nerve center." *Id*. at 81 (internal quotation marks omitted). This "should normally be the place where the corporation maintains its headquarters." *Id*. at 93.

18. At the time of the filing of the Petition and this notice of removal, NUSA was organized under the laws of Delaware, and its headquarters were in California. Pet., ¶ 6. Accordingly, NUSA is not a citizen of Missouri.

19. Therefore, the parties are minimally diverse.

    **2.    The Proposed Class Exceeds 100**

20. For purposes of removal, the Court looks to a plaintiff's allegations respecting class size. *See Brown v. Mortg. Elec. Registration Sys., Inc.*, 738 F.3d 926, 932-33 (8th Cir. 2013).

21. Plaintiff purports to bring a claim on behalf of herself and "[a]ll Missouri citizens who purchased the Products in the five years preceding the filing of this Petition." Pet., ¶ 28. Plaintiff asserts that, "[u]pon information and belief, the Class consists of hundreds or thousands of purchasers." Pet., ¶ 30. Thus, the proposed class well exceeds 100 members.

### 3. The Aggregate Amount in Controversy Exceeds Five Million

22. Under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(6). "[T]he statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013).

23. To determine the amount in controversy, the Court must assume that the allegations in the operative pleading are true and that a jury will return a verdict for the plaintiff on all such claims. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013) (internal citation and quotation marks omitted) ("[W]hen determining the amount in controversy, the question 'is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'"); *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 754 (11th Cir. 2010) ("The point is that a removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.").

24. In a notice of removal, the defendant need "include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 944–45 (8th Cir. 2012) ("The removing party's 'burden of describing how the controversy exceeds $5 million' constitutes 'a pleading requirement, not a demand for proof. Discovery and trial come later.'"). The Court also may consider summary-judgment-type evidence relevant to the amount in controversy. *See Pretka*, 608 F.3d at 755 ("Defendants may introduce their own affidavits, declarations, or other documentation—provided of course that

5

removal is procedurally proper."); *Toller v. Sagamore Ins. Co.*, 514 F. Supp. 2d 1111, 1120 (E.D. Ark. 2007) (same).

25. Here, plaintiff alleges that "[t]he amount in controversy is less than $75,000 per Plaintiff and Class Member individually and less than $5,000,000 in the aggregate." Pet., ¶ 7. This conclusory assertion is irrelevant to the calculation of the amount in controversy for purposes of determining CAFA jurisdiction. As the Supreme Court clarified in *Standford Fire*, a named plaintiff cannot stipulate to limit the amount in controversy under CAFA "because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." 133 S. Ct. at 1349.

26. Here, it is clear that the amount in controversy exceeds $5 million.

27. Plaintiff seeks, among other things, damages and disgorgement or restitution that she admits would be "at most equal to the refund of the purchase price she paid for the Product" for the putative class for purchases made in the last five years. Pet., ¶¶ 7, 28. Thus, the amount in controversy in this case is at least the total price paid by all putative class members for the challenged products over the last five years. *See* 28 U.S.C. § 1332(d)(6); *see also Harrington Enterprises, Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1199 (W.D. Mo. 2013) (compensatory damages properly included in amount in controversy).

28. Defendants may demonstrate the amount in controversy using the sales numbers for a challenged product. *Raskas*, 719 F. 3d at 888. Moreover, in cases involving alleged consumer fraud, estimates based on population percentages may be used in measuring the amount in controversy for CAFA jurisdiction. *See*, *e.g.*, *McNamee v. Knudsen & Sons, Inc.*, 2016 WL 827942, at *2 (E.D. Mo. Mar. 3, 2016) (accepting estimate of juice sales in Missouri that calculated Missouri's percentage of gross national juice sales based on Missouri's

6

population); *Coleman-Anacleto v. Samsung Electronics Am., Inc.*, Case No. 16-cv-2941, ECF No. 40 (N.D. Cal. Sept. 12, 2016) (accepting defendant's allocation of 11% of national sales of televisions to California based on California's share of U.S. population); *Robinson v. Avanquest N. Am. Inc.*, 2015 WL 196343, at *4 (N.D. Ill. Jan. 13, 2015) (accepting defendant's "representative indicator" of damages calculated by using Illinois' percentage of population in the United States to estimate sales of software in Illinois).

29. NUSA does not track sales of Raisinets by state. However, as described in the concurrently filed Declaration of Tim Melvin ("Melvin Decl."), NUSA does track national sales of its Raisinets products by year. Melvin Decl. at ¶¶ 2-3. According to the U.S. Census, the national population in 2013 was approximately 315 million. The population of Missouri that year was approximately 6 million people, or roughly 1.9% of the national population. Applying that ratio to the nationwide sales of Raisinets during the class period, sales of Raisinets in Missouri totaled approximately $6.4 million. *See* Melvin Decl. at ¶ 3 (Raisinets nationwide sales for the alleged class period exceed $336,257,015). Thus, NUSA sales of the challenged products in Missouri during the class period well exceeded the $5 million threshold.

30. Indeed, the amount in controversy is actually substantially greater than the total purchase price paid by the class because plaintiff seeks injunctive relief. *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (injunctive relief properly included in amount in controversy).

31. The value of injunctive relief is evaluated "not [based on] how a plaintiff subjectively values a right" but based on "the actual value of the object of the suit." *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1019 (8th Cir. 2010). When measuring the value of injunctive relief for CAFA jurisdictional purposes, courts in this Circuit consider the cost to a

defendant of complying with an injunction in determining the amount in controversy. *See Adams v. Am. Family Mut. Ins. Co.*, 981 F. Supp. 2d 837, 849-51 (S.D. Iowa 2013); *Toller v. Sagamore Ins. Co.*, 558 F. Supp. 2d 924, 930-31 (E.D. Ark. 2008).

32. Plaintiff alleges that NUSA's packages contain illegal non-functional slack fill and explicitly seeks injunctive relief, which is available under the MMPA. Pet., ¶¶ 4, 31, 44.

33. Injunctive relief that would address plaintiff's claims would likely entail: 1) destroying packaging currently in stores and held by NUSA; 2) redesigning the packaging of the product; and 3) corrective advertising. To ensure compliance with such injunctive relief, NUSA would need to change its packaging nationwide. The cost of taking these actions would well exceed several million dollars.

34. Plaintiff also seeks reasonable attorney's fees and costs, which are available under Mo. Rev. Stat. § 407.025.1. Pet., ¶ 8 & Prayer for Relief; *Harrington Enterprises, Inc. v. Safety-Kleen Sys., Inc.*, 42 F. Supp. 3d 1197, 1199 (W.D. Mo. 2013) (statutory attorney's fees properly included in amount in controversy). "While the Eighth Circuit has not yet addressed the issue, the majority of district courts within this circuit have held that attorney fees incurred post-removal are includable in the amount in controversy calculation so long as they are reasonable." *McNamee*, 2016 WL 827942, at *2 (internal quotation marks omitted).

35. The significant fees the firm representing the plaintiff in this case, Steelman, Gaunt & Horseman, has received in the past support a similar fee estimate in this case. In two cases that settled before any motion practice, Missouri courts awarded the Steelman, Gaunt & Horseman firm attorney's fees of $650,000 in cases involving claims under the MMPA. The settlements in those cases covered injunctive and declaratory relief but did not include any monetary damages.

8

722685308

36. Based on these awards, attorney's fees incurred if this case were to progress to motion practice, discovery, and/or trial would likely be greatly in excess of those amounts.

37. Based on NUSA's potential liability for damages, injunctive relief, and attorney's fees, the amount in controversy exceeds $5,000,000.

### 4. No Exception Applies to Defeat CAFA Jurisdiction

38. Neither CAFA's "local controversy" nor its "home state" exceptions apply to this case. The local controversy exception only applies if the case involves at least one in-state defendant from whom significant relief is sought. 28 U.S.C. § 1332(d)(4)(A)(ii); s*ee also O'Shaughnessy v. Cypress Media, L.L.C.*, 2014 WL 1791065, at *5 (W.D. Mo. May 6, 2014) (local controversy exception did not apply where only defendant was not a Missouri citizen).

39. For the home state exception to apply, all primary defendants must be citizens of the state in which the case is filed. 28 U.S.C. § 1332(d)(B); *see also Sundy v. Renewable Envtl. Sols., L.L.C.*, 2007 WL 2994348, at *4 (W.D. Mo. Oct. 10, 2007). As discussed *infra*, NUSA, the sole defendant, is not a citizen of Missouri, and therefore this exception does not apply either.

## VII. RESERVATION OF RIGHTS AND REQUEST FOR ADDITIONAL BRIEFING IF NECESSARY

40. By removing this matter, NUSA does not waive and, to the contrary, reserves any rights it may have, including, without limitation, all available arguments and affirmative defenses. NUSA does not concede that class certification is appropriate or that plaintiff is entitled to any recovery whatsoever. However, the question is not whether class certification is appropriate or whether plaintiff will recover any amount for any particular time period. "[W]hen determining the amount in controversy, the question 'is not whether the damages *are*

greater than the requisite amount, but whether a fact finder *might* legally conclude that they are.'" *Raskas*, 719 F.3d at 887 (internal citation and quotation marks omitted).

41. In the event that plaintiff files a request to remand, or the Court considers remand *sua sponte*, NUSA respectfully requests the opportunity to submit additional argument and/or evidence in support of removal.

## VIII. CONCLUSION

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, NUSA hereby removes the above-captioned action from the Circuit Court for Phelps County, Missouri, to the United States District Court for the Eastern District of Missouri, Eastern Division.

Dated: January 12, 2017       Respectfully submitted,


/s/Carmine R. Zarlenga

Carmine R. Zarlenga 386244DC
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Telephone: (202) 263-3227
Facsimile: (202) 263-5227
czarlenga@mayerbrown.com

David A. Roodman 38109MO
BRYAN CAVE LLP
211 North Broadway #3600
St. Louis, MO 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020
daroodman@bryancave.com

722685308

1

## CERTIFICATE OF SERVICE

      I hereby certify that on January 12, 2017, the foregoing document was served upon the following via overnight mail and electronic mail:

David L. Steelman
Stephen F. Gaunt
Patrick J. Horsefield
Steelman, Gaunt & Horsefield
901 Pine Street, Suite 110
Rolla, Missouri 65401
dsteelman@steelmanandgaunt.com
sgaunt@steelmanandgaunt.com
phorsefield@steelmanandgaunt.com

*Attorneys for Plaintiff*

                                          By:    /s/Carmine R. Zarlenga
                                                  *Attorney for Nestlé USA, Inc.*

1