IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LAHONEE HAWKINS,<br>Individually and on behalf of all<br>others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>NESTLE U.S.A., INC.,<br><br>    Defendant. | Civil Action No.: 4:17-cv-00205-HEA<br><br>The Hon. Henry Edward Autrey |

**PLAINTIFF'S FIRST AMENDED COMPLAINT AND JURY DEMAND**

Plaintiff Lahonee Hawkins ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following facts and claims upon personal knowledge, investigation of counsel, and information and belief.

**NATURE OF THE CASE**

1.  "Informed consumers are essential to the fair and efficient functioning of a free market economy. Packages . . . should enable consumers to obtain accurate information as to the quantity of the contents and should facilitate value comparisons." 15 U.S.C.A. § 1451.

2.  The average consumer spends a mere 13 seconds making an in-store purchasing decision.[1] That decision is heavily dependent on a product's packaging, and particularly the package dimensions: "Faced with a large box and a smaller box, both with the same amount of

---

[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online") (last accessed Feb. 9, 2017).

1

product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

3. Plaintiff brings this class-action lawsuit based on Defendant's misleading, deceptive and unlawful conduct in packaging its Raisinets candy in opaque cardboard containers that have the following dimensions: 6-3/16" x 11/16" x 3-1/8" ("Products"). The Products are uniformly under-filled or "slack-filled." Specifically, approximately 55% of the Raisinets container is filled with candy, and the remaining 45% of the container is empty. As more fully described herein, the slack-fill in the Products is non-functional, and therefore misleading and unlawful.

4. In purchasing the Products, consumers were denied the benefit of the bargain between what was represented, and what was received. Consumers would not have purchased the Products had they known that the containers were substantially empty, or would have purchased them on different terms.

5. Accordingly, Plaintiff brings this action on behalf of herself and all others similarly situated. Plaintiff seeks to represent a Nationwide Class and a Missouri Consumer Subclass (defined *infra*) (together referred to as "Classes"). Plaintiff is seeking damages, injunctive relief, disgorgement of Defendant's unjust enrichment, and all other remedies this Court deems appropriate.

## PARTIES

6. Plaintiff Lahonee Hawkins is a resident of Rolla, Missouri. On or around November 2016, Plaintiff purchased a Raisinets Product at a Walgreens store in Rolla, Missouri, for personal, family, or household purposes. The purchase price of the Raisinets Product was

---

[2] http://www.consumerreports.org/cro/magazine-archive/2010/january/shopping/product-packaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers) (last accessed Feb. 9, 2017).

approximately $1.59.  Plaintiff's claim is typical of all members of the Classes in this regard.  In addition, the non-functional slack-fill contained in the Products purchased by Plaintiff is typical of the slack-fill contained in the Products purchased by members of the Classes.

      7.      Defendant Nestle U.S.A., Inc. is a Delaware corporation with its corporate headquarters located at 800 North Brand Blvd., Glendale, California 91203 and with The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801 designated as its agent for service of process.  Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

## JURISDICTION AND VENUE

      8.      This is a class-action lawsuit seeking monetary damages and equitable relief pursuant to Federal Rule of Civil Procedure 23.

      9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are citizens of different states.  Furthermore, jurisdiction is conferred upon this Court pursuant to the Class Action Fairness Act in that damages exceed $5,000,000 in the aggregate, and the parties are citizens of different states.  28 U.S.C. § 1332(d)(2).

      10.      This Court has personal jurisdiction because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within Missouri through its sales of the Products to Missouri consumers.

      11.      Plaintiff is a citizen of the State of Missouri.

      12.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of Missouri.

Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## ALLEGATIONS OF FACT

### Federal and Missouri State Law Prohibit Non-Functional Slack-Fill

13. Defendant's deceptive and misleading conduct, as described herein, violates the Federal Food, Drug and Cosmetic Act ("FDCA") Section 403 (21 U.S.C. § 343); Section 403(d) (21 U.S.C. § 343(d)); and the Code of Federal Regulations Title 21 part 100, *et seq.*, as well as parallel Missouri statutes. As described in detail below, these violations contravene Missouri's Merchandising Practices Act ("MMPA"), which prohibits deceptive, fraudulent, misleading and unfair conduct in connection with the sale or advertisement of any merchandise in trade or commerce. § 407.020.43, RSMo.

14. 21 C.F.R. § 100.100 prohibits nonfunctional slack-fill:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

    (1) Protection of the contents of the package;

    (2) The requirements of the machines used for enclosing the contents in such package;

    (3) Unavoidable product settling during shipping and handling;

    (4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

4

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other nonmandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

15. In addition, pursuant to 21 C.F.R. § 100.100, a container is presumptively misleading if it does not allow the consumer to fully view its contents and if it contains nonfunctional slack-fill.

16. In adopting 21 C.F.R. 100.100, the United States Food and Drug Administration ("FDA") stated: "Congress determined . . . that packages that are only partly filled (containing slack-fill) create a false impression as to the quantity of food they contain." Misleading Containers; Nonfunctional Slack-Fill, 58 Fed. Reg. 64123-01, 64128 (Dec. 6, 1993). "In fact, Congress stated in arriving at section 403(d) of the act that that section is 'intended to reach deceptive methods of filling where the package is only partly filled and, *despite the declaration of quantity of contents on the label*, creates the impression that it contains more food than it does.'" *Id*. at 64129 (internal citations omitted) (emphasis added).

17. Missouri state law also prohibits non-functional slack-fill and incorporates language identical to 21 U.S.C. § 343(d): "[F]ood shall be deemed to be misbranded: . . . . (4) If its container is so made, formed or filled as to be misleading." § 196.075, RSMo.

**Defendant's Products Contain Substantial Slack-Fill**

18. Defendant manufactures, markets, promotes, labels, advertises, and sells a variety of confectionery products, including the Products at issue.

5

19.     The Products are sold throughout the United States, including the State of Missouri, and are regularly sold at grocery stores, convenience stores, and other food retail outlets.

20.     The Products are small, chocolate-covered-raisin candies.



21.     The Products are uniformly packaged in opaque cardboard containers that have the following dimensions: 6-3/16" x 11/16" x 3-1/8".[3]

22.     The Products are also uniformly packaged with approximately 45% slack-fill. Because the containers are opaque, consumers, such as Plaintiff and members of the Classes, could not see the contents of the container at the time of purchase, including the substantial, non-functional slack-fill.[4]

---

[3] The Raisinets cardboard containers are covered with an additional thin layer of clear plastic wrapping.
[4] In order to more clearly depict the amount of slack-fill, the Raisinets Product packaging has been cut open.  No other modification was made to the container.

6



23. As depicted, the Products are packaged in opaque, non-pliable cardboard containers, that do not allow consumers to view their contents.

24. Reasonable consumers attached importance to the Product containers' size as a basis for their purchasing decisions.

25. Defendant's misrepresentations and omissions are uniform because the Products are packaged in uniformly-sized containers, which have approximately 45% slack-fill.

7

**The Products' Slack-Fill Is Non-Functional**

26.     The slack-fill in the Products is non-functional, and therefore unlawful, because it cannot be justified by any of the safe-harbor provisions contained in 21 C.F.R § 100.100(a).

**21 C.F.R § 100.100(a)(1) [Protection of the Contents of the Package]**

27.     The slack-fill in the packaging of the Products does not protect the Products' contents.

28.     A classic example of slack-fill that is designed to protect the contents of a package is the empty space contained in bags of potato chips.  The packages are filled with air to protect the fragile chips during shipment and in retail display.

29.     By contrast, here, the substantial slack-fill may actually *increase* the risk of damaging the candy contained in the packaging.  The more empty space there is in the Products' packaging, the more movement the candy will likely experience within the packaging, which increases the potential the candy pieces will be damaged.

30.     Further, the Raisinets candies are not at significant risk of damage because they are small, hard, dense, and durable, and are not readily susceptible to cracking, breaking or crumbling (unlike, for example, potato chips packaged in a soft, malleable bag).

31.     In addition, the rigid cardboard containers in which the Products are packaged provide significant protection to the candies.

32.     Moreover, Raisinets candy is alternatively sold in soft, malleable bags, which offer little protection to the Products, thereby demonstrating the candies' inherent durability, as well as Defendant's implicit recognition of it.

**21 C.F.R § 100.100(a)(2) [Requirements of Machines Used for Enclosing the Contents]**

33.     There is no machine requirement used for enclosing the Products' contents that would justify the Products' substantial slack-fill.

34.     In industry-standard packaging-line machinery, a candy container is held in a vertical position by a "cartoner" machine with the top end of the container remaining open. The container is moved in an intermittent manner such that the opening of the container is indexed directly below the filler. The filler typically consists of a hopper containing bulk quantities of product. The product is then conveyed from the hopper to the scale, which weighs the pre-determined amount of product. Next, the product is dropped into the container through its open end, either directly through a chute into the container, or into a dispenser with a gate that opens when the container is in position.

35.     After the container is filled, the cartoner machine conveys the container to the next station, where the container's top flaps are sealed. Thereafter, the container exits the cartoner machine to the tray or case packer.

36.     The industry standard machines are capable of filling and enclosing the Products with far less slack-fill than the Products currently contain.

37.     In fact, similar candy products packaged and sold in similar cardboard containers have substantially less slack-fill than Defendant's Products.

38.     Accordingly, the amount of slack-fill cannot be justified by the machines and equipment used to enclose the Products.

**21 C.F.R § 100.100(a)(3) [Unavoidable Product Settling During Shipping and Handling]**

39.     Due to the candies' size, shape and consistency, when placed in the packaging, the Raisinets candies create minimal void patterns and experience very little "settling." In fact, Product "settling" accounts for approximately 1% of the slack-fill in the Products' packaging.

40.     Accordingly, the substantial slack-fill in the Products is not due to unavoidable product settling.

**21 C.F.R § 100.100(a)(4) [Need for the Package to Perform a Specific Function]**

41.     The Products' packaging does not "perform a specific function," such as playing a role in the "preparation or consumption" of the candies (for example, cereal that is sold in a bowl-shaped container to which a consumer adds milk and that necessarily requires empty space to accommodate that purpose).

42.     Nor is any such function "clearly communicated to consumers." The Products' packaging and labeling are silent as to any function beyond merely holding the candies.

**21 C.F.R § 100.100(a)(5) [Reusable Container Where the Container Has Independent Value]**

43.     The Products are not packaged in a container that is meant to be reused or otherwise used after the candies are consumed.

44.     Nor is the packaging a "durable commemorative or promotional package."

45.     In addition, the packaging does not have any value that is both significant in proportion to the value of the Products and independent of its function to hold the food.

46. Rather, the packaging is a cardboard container that is expected to be discarded after the candies are consumed, and a reasonable consumer does not attach any independent value, monetary or otherwise, to the Products' packaging.

**21 C.F.R § 100.100(a)(6) [Food Labeling and Packing Requirements]**

47. As described herein, the level of fill in the Products' containers can certainly be increased.

48. Further, there is nothing unique or inherent to the small Raisinets candy pieces (e.g., their shape, size, composition, etc.) that would prevent more of them from being placed in the packaging. Indeed, similar candy products packaged in similar packages contain substantially higher levels of fill than Defendant's Products.

49. There is also nothing unique or inherent to the candies that requires Defendant to package them in a specific packaging material, such as the cardboard containers at issue.

50. Nor is there an industry standard for packaging the Products in a container of a specific shape, size, or in one containing a specific number of candy pieces. In fact, Defendant has packaged the Raisinets candies in soft, malleable bags of varying sizes and shapes. Further, Defendant has packaged the Raisinets candies in smaller cardboard containers.

51. Finally, the packaging could be reduced and still accommodate the required food labeling. Currently, the required food labeling occupies less than half of the surface area of one side of the Products' containers. In addition, similar candy products are packaged and sold in containers smaller than Defendant's Products, and yet the smaller containers successfully accommodate the required food labeling.

**The Products' Packaging Is Misleading to Reasonable Consumers**

52.     The Products' packaging is misleading to reasonable consumers, including Plaintiff and members of the Classes.

53.     Reasonable consumers, such as Plaintiff, attached importance to the Product containers' size as a basis for their purchasing decisions.  Plaintiff and members of the Classes were misled because they believed that they were purchasing more Product than was actually received.  Had Plaintiff and members of the Classes known Defendant's packaging was substantially slack-filled, they would not have purchased the Products, or would have purchased them on different terms.

54.     Plaintiff and members of the Classes suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented.

55.     Plaintiff would, however, likely purchase the Products in the future if the Products complied with the applicable laws.

## CLASS ALLEGATIONS

56.     Plaintiff hereby re-alleges and incorporates the foregoing allegations as if set forth herein in their entirety.

57.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of herself and all persons in the United States who, within the relevant statute-of-limitation periods, purchased the Products ("Nationwide Class").

58.     Plaintiff also seeks to represent a subclass defined as all Missouri citizens who, within the five years preceding the filing of this Complaint, purchased the Products for personal,

family, or household purposes ("Missouri Consumer Subclass") (collectively, with the Nationwide Class, "Classes").

59. Excluded from the Classes are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendant has a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

60. *Numerosity – Rule 23(a)(1).* Upon information and belief, the Class consists of hundreds of thousands of purchasers dispersed throughout the United States, and the Subclass consists of thousands of purchasers throughout the State of Missouri. Accordingly, it would be impracticable to join all members of the Classes before the Court.

61. *Predominance and Commonality – Rule 23(a)(2); (b)(3).* There are numerous and substantial questions of law or fact common to all members of the Classes that predominate over any individual issues. Included within the common questions of law or fact are:

    a. Whether the Products' containers or packaging were made, formed, or filled as to be misleading;

    b. Whether the Products contained non-functional slack-fill;

    c. Whether Defendant violated the MMPA by selling the Products in containers with non-functional slack-fill;

    d. Whether, and to what extent, injunctive relief should be granted to prevent such conduct in the future;

  e. Whether Defendant has been unjustly enriched by the sale of the Products to the Plaintiff and members of the Classes;

  f. Whether Plaintiff and members of the Classes have sustained damages as a result of Defendant's unlawful conduct; and

  g. The proper measure of damages sustained by Plaintiff and members of the Classes.

62. *Typicality – Rule 23(a)(3)*. The claims of the Plaintiff are typical of the claims of members of the Classes, in that she shares the above-referenced facts and legal claims or questions with members of the Classes, there is a sufficient relationship between the damage to Plaintiff and Defendant's conduct affecting members of the Classes, and Plaintiff has no interests adverse to the interests of other members of the Classes.

63. *Adequacy of Representation – Rule 23(a)(4).* Plaintiff will fairly and adequately protect the interests of members of the Classes and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

64. *Superiority – Rule 23(b)(3)*. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Classes is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

  a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

14

  b. Absent a Class, the members of the Classes will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

  c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

  d. When the liability of Defendant has been adjudicated, claims of all members of the Classes can be administered efficiently and/or determined uniformly by the Court; and

  e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Classes can seek redress for the harm caused to them by Defendant.

65. Because Plaintiff seeks relief for all members of the Classes, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendant.

66. Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute, which is the center of this litigation. Adjudications with respect to individual members of the Classes would, as a practical matter, be dispositive of the interest of other members of the Classes who are not parties to the adjudication and may

impair or impede their ability to protect their interests. As a consequence, class treatment is a superior method for adjudication of the issues in this case.

## FIRST CLAIM FOR RELIEF
### Violation of Missouri's Merchandising Practices Act
*(for the Missouri Consumer Subclass)*

67. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of the Missouri Consumer Subclass for Defendant's violations of the MMPA. The MMPA "is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair practices." *Huch v. Charter Commc'ns Inc.*, 290 S.W. 3d 721, 725 (Mo. banc. 2009). The MMPA provides that it is unlawful to "act, use or employ . . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . ." § 407.020.1, RSMo.

69. Defendant's conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendant incorporates substantial non-functional slack-fill into the Products' non-transparent packaging. Among other things, Plaintiff and members of the Classes were misled because they believed that they were purchasing more Product than was actually received. As such, the Products' containers are made, formed, or filled as to be misleading.

70. Defendant's misrepresentations and omissions as set forth in this Complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Missouri Consumer Subclass.

71. In violation of the MMPA, Defendant employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Products.

72. Plaintiff and members of the Missouri Consumer Subclass purchased the Products for personal, family, or household purposes.

73. Plaintiff and the Missouri Consumer Subclass members suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented. Had Plaintiff and members of the Missouri Consumer Subclass known the truth about the Products, they would not have purchased the Products, or would have purchased the Products on different terms.

74. In addition, Defendant's conduct has caused Plaintiff and the Missouri Consumer Subclass members irreparable injury. As described herein, Defendant has engaged in unlawful and misleading conduct on a routine and automated basis, harming Missouri consumers in a uniform manner. Unless restrained and enjoined, Defendant will continue such conduct. As authorized under § 407.025.2, RSMo., Plaintiff requests injunctive relief, and such other equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**Unjust Enrichment**
(*for the Classes*)

75. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

76. By purchasing the Products, Plaintiff and members of the Classes conferred a benefit on Defendant in the form of the purchase price of the slack-filled Products.

77. Defendant had knowledge of such benefits.

78. Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

79. Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

80. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the Plaintiff's and members of the Classes' expense, and therefore restitution and/or disgorgement of such economic enrichment is required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, seeks judgment against Defendant, as follows:

a. For an order certifying the Nationwide Class and the Missouri Consumer Subclass, under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of all Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

    b.      For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

    c.      For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

    d.      For an order awarding all compensatory damages, in an amount to be determined by the Court and/or jury.

    e.      For prejudgment interest on all amounts awarded;

    f.      For interest on the amount of any and all economic losses, at the prevailing legal rate;

    g.      For an order of restitution and all other forms of equitable monetary relief;

    h.      For injunctive relief as pleaded or as the Court may deem proper;

    i.      For an order awarding Plaintiff and all Classes their reasonable attorneys' fees, expenses and costs of suit; and

    j.      For all such other and further relief as may be just and proper.

Dated this 17th day of February 2017.

                Lahonee Hawkins, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiff

By:    /s/ David L. Steelman
        David L. Steelman, #27334
        dsteelman@steelmanandgaunt.com
        Stephen F. Gaunt, #33183
        sgaunt@steelmanandgaunt.com
        Patrick J. Horsefield, #50380
        phorsefield@steelmanandgaunt.com
        STEELMAN, GAUNT & HORSEFIELD
        901 Pine Street, Suite 110
        Rolla, Missouri  65401

Tel: (573) 458-5231
Fax: (573) 341-8548

Attorneys for Plaintiff and the Putative Class