# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| LAHONEE HAWKINS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 4:17-cv-00205 |
| v. | ) ) | |
| NESTLE U.S.A., INC., | ) ) | |
| Defendant. | ) ) | |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Defendant's Motion to Dismiss fundamentally misconstrues the standard for a motion to dismiss and the Missouri Merchandising Practices Act ("MMPA") in two critical ways.    First, on a motion to dismiss, the court accepts the allegations of the complaint as true.    Here, as alleged, Plaintiff purchased Defendant's Raisinets candy in an opaque, cardboard container that was approximately 45% empty.    *See* First Amended Complaint ("FAC") ¶¶ 3, 22-25.



At the time of purchase, Plaintiff did not know that the oversized container was nearly half empty, and was therefore denied the benefit of the bargain as to the amount of Product she believed she was purchasing, and what she actually received.    *Id.* ¶¶ 53-54. These basic facts are accepted as true at this stage of the proceedings.    By contrast, Defendant cannot use its Motion as an opportunity to re-plead Plaintiff's Complaint, or to inject additional facts into it.    Defendant's baseless assertions about what a consumer could or should glean from the package labeling must be rejected.    *See* Motion at 1, 6-7

(mischaracterizing Plaintiff's Complaint, which never alleges that: "*she absolutely, positively knew at that point—prior to purchase—that the box was not full.*"). Likewise, Defendant's allegations concerning the functionality of a dispenser tab on the side of the box must be disregarded. *Id.* at 13; *Victorian v. Wells Fargo Home Mortg.*, 4:15-CV-00667-AGF, 2015 WL 5766256, at *2 (E.D. Mo. Sept. 30, 2015) (excluding all references made by the defendant to facts outside of the plaintiff's amended complaint).

Moreover, the law is unequivocal: Defendant cannot package its Products with unlawful slack-fill, and then attempt to excuse its conduct through labeling. If this were the case, the slack-fill laws would be rendered meaningless by any truthful net-weight disclosure. The law, however, does not permit Defendant to enclose its Products with roughly 45% empty space, and then protect itself from this misleading conduct by stating that there is ¼ cup or 45 grams of candy per serving in the container. Similarly, Defendant cannot show – even improperly, at this early stage – that a tab on the side of the box justifies the inclusion of 45% empty space.

In contending that its Product labeling should insulate it from liability, Defendant attempts to circumvent the consumer protection laws by shifting its own obligation to package its Products in a manner that is not misleading to consumers – the very people the laws at issue seek to protect. Specifically, Defendant asserts that consumers should: (1) read the net weight and content disclosures on the front of the box; (2) cross compare this information against the nutrition panel on the back of the box; and (3) manipulate the Products such that they notice the "maraca-like sound and feel of candy moving around in a box." Motion at 6-7. Defendant's suppositions about what consumers should do to dispel the deception inherent in Defendant's packaging are wholly improper at this early

stage, where Plaintiff has not yet had the opportunity to test these assertions through discovery and expert analysis.  Moreover, Defendant's contentions contradict the basic facts of Plaintiff's Complaint.  Even assuming for the sake of argument that it is apparent that the Products are not "brimming with candies" (Motion at 8), this in no way excuses the excessive amount of misleading, non-functional slack-fill in the Products.

Second, Defendant misconstrues the essential purpose of the MMPA, which is grounded in the public policy tenet that purchasers should not be misled or deceived into buying products that are not as they are represented.  Here, the container sizes themselves were material representations made to consumers, which led them to believe they were purchasing substantially more Product than was actually received.  Accordingly, Plaintiff and members of the Classes suffered an ascertainable loss when they received Products that were nearly half empty, irrespective of any net weight disclosure.  This difference – between what Defendant represented and what Plaintiff and Class Members received – is precisely the type of conduct that the MMPA is designed to remedy.

Defendant's claims about any legal shortcomings in Plaintiff's Complaint are also meritless.  Plaintiff does not seek to privately enforce the FDA's regulations; rather, she asserts claims for violation of the MMPA and Missouri common law based on Defendant's misleading and unlawful conduct.  In addition, the MMPA confers standing on Plaintiff to seek an injunctive remedy to prospectively deter prohibited conduct in order to protect Missouri citizens.  This is true irrespective of whether Plaintiff now has knowledge of the slack-fill contained in Defendant's Products.

## II.
## EXAMINATION OF DEFENDANT'S LABELING STATEMENTS AND WHETHER A REASONABLE CONSUMER WAS MISLED ARE INAPPRORPIATE FOR AND UNAVAILAING ON A MOTION TO DISMISS

### A. On a Motion to Dismiss, the Facts Alleged Are Accepted as True and Viewed in the Light Most Favorable to the Plaintiff

The liberal pleading standard created by the Federal Rules of Civil Procedure merely requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*per curiam*) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston School Dist.,* 512 F.3d 472, 476 (8th Cir. 2008). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* In the event a complaint is dismissed for failure to state a claim, leave to amend is "freely given." *See Forman v. Davis,* 371 U.S. 178, 182 (1962).

### B. A Determination of Whether a Reasonable Consumer Would Be Misled Is Not Appropriate for, and Cannot Be Proven on, a Motion to Dismiss

Defendant requests that this Court take the extraordinary step of deciding a salient fact question (although it attempts to disingenuously posit the inquiry as a question of law), and determine that no reasonable consumer would be misled by the excessive non-functional slack-fill in the Products' packaging. Defendant makes this request despite the fact that Missouri courts, and others, have consistently rejected the notion that a court can

decide this issue on a motion to dismiss.  Moreover, this case does not represent a "rare circumstance" that would justify an early determination of whether a reasonable consumer would be deceived.  *See Thornton v. Pinnacle Foods Grp. LLC*, No. 4:16-CV-00158 JAR, 2016 WL 4073713, at *3 n.3  (E.D. Mo. Aug. 1, 2016) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss," and noting that the case is not one of the "rare situations" in which a court will find a lack of deception as a matter of law); *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312-13 (Mo. Ct. App. 2016) (declining to decide how a "reasonable consumer" perceives the term "all natural" at an early stage of litigation, and that the question is appropriately addressed on a motion for summary judgment or at trial).[1]  Contrary to Defendant's assertion, this case does not represent a situation where Plaintiff has pled misrepresentations on which no consumer could conceivably rely.  *See* Motion at 5-6.  Instead, as alleged, Plaintiff and a similarly situated class of consumers were misled by the inclusion of unlawful slack-fill in the Product packaging.  FAC ¶¶ 52-53.  For purposes of an initial pleading, Plaintiff has adequately alleged her claims.

---

[1] *See also Samet v. Procter & Gamble Co.,* No. 5:12-CV-01891 PSG, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013) (finding that the amount of slack-fill expected by the reasonable consumer is a "debatable factual question that is inappropriate to resolve at the motion to dismiss stage."); *Thomas v. Costco Wholsale Corp.*, No. 5:12-CV-02908-EJD, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) ("The Court finds that . . . [the] slack-fill claims are properly pled, may deceive a reasonable consumer, and are inappropriate to resolve at the motion to dismiss stage."); *Burton v. Hodgson Mill, Inc.*, No. 16-CV-1081-MJR-RJD, 2017 WL 1282882, at *6 (S.D. Ill. Apr. 6, 2017) ("[A] reasonable person's interpretation of the various labels and representations on a given product . . . is best left for the jury."); *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938-39 (9th Cir. 2008) ("California courts, however, have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" and noting that "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate.").

5

### 1.   Labeling Statements Are Irrelevant to Slack-Fill Liability

In addition to being premature, Defendant's assertions about its labeling statements cannot insulate it from slack-fill liability. Whether a product is slack-filled or accurately labeled are *wholly separate inquiries*; a finding that a package is properly labeled has no bearing on whether or not it is also unlawfully slack-filled. *See* 58 Fed. Reg. 64123-01, 64128-29 (The "FDA finds that the presence of an accurate net weight statement does not eliminate the misbranding that occurs when a container is made, formed, or filled so as to be misleading.").[2] This is because "[r]ecognizing that a product's packaging size is a representation, Congress stated . . . that 'Packages only partly filled create a false impression as to the quantity of food which they contain despite the declaration of quantity of contents on the label.'" *Id.* at 64131.[3] Accordingly, and despite Defendant's assertions to the contrary, label statements do not dispel the misleading aspect of non-functional slack-fill. *Id.* at 64128-29, 64131. To hold otherwise, "the prohibition against misleading fill in section 403(d) of the act [would be]

---

[2] *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. 1972) ("The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight.").

[3] *See also In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, No. MC 15-1825 (ESH), 2016 WL 6078250, at *6 (D.D.C. Oct. 17, 2016) ("The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface. Moreover, in this case, '[t]he size of [defendant's] containers is exactly what makes them misleading, because consumers cannot see the amount of their contents.'"); *Hobby Indus. Assn. of Am., Inc.,* 101 Cal. App. 3d at 367, 161 Cal. Rptr. 601, 606-07 (Ct. App 1980) ("Very often package size suggests the size of the item housed therein: a big package implies big contents" and "[f]or a seller to package goods in containers which unknown to the consumer are appreciably oversized . . . is as much a deceptive practice, and an unfair method of competition, as if the seller was to make an explicit false statement of the quantity or dimension of his goods.") (internal citation omitted); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 931–32 (N.D. Cal. 2014) ("StarKist's arguments miss the point of the allegations here. Plaintiff has alleged that StarKist's 5–ounce cans of tuna contain less tuna than would be expected, *i.e.*, not an 'adequate amount.' The appearance of the can itself, not its label, is what Plaintiff alleges to be misleading.").

redundant."  *Id.* at 64129.  Therefore, manufacturers—like Defendant—are legally required to package their products in a non-misleading way, independent of, and in addition to, their legal obligation to accurately label the products.[4]

### 2.      It Is Settled Law that a Package Label Does Not Dispel Confusion

Courts have consistently rejected the argument that a product's labeling can dispel the deception caused by unlawfully slack-filled packaging.  In *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 404 (E.D.N.Y. 2010), the product at issue was a partially filled container of nutritional-supplement powder.  Despite the package label clearly displaying the product's weight and number of servings, the court found that the container could nonetheless constitute a "misleading representation," and, consequently, denied the defendant's motion to dismiss plaintiff's slack-fill and unjust enrichment claims.  *See also Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *6-7 (S.D.N.Y. Oct. 26, 2016) (in a case involving slack-filled candy containers, the court "decline[d] to adopt [defendant's] theory that a manufacturer of a deceptively packaged product is immune from suit so long as the package accurately lists the product's net weight and quantity.").[5]

Missouri federal and state courts have likewise rejected the argument that accurate product labeling can eliminate consumer deception caused by packaging misrepresentations.  In *Thornton*, 2016 WL 4073713, at *1, the plaintiff alleged that

---

[4] *See id* at 64124-25 ("Section 403(d) of the act addresses a completely different aspect of how food is presented than the nutrition label does.").

[5] *See also Hobby Indus. Assn. of Am., Inc.,* 101 Cal. App. 3d at 367–68 (holding that "[c]lear disclosures on labels, scale drawings, and other informative matter may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as inherently deceptive" and "as implicitly imparting inaccurate information."); *In re McCormick & Co.,* 2016 WL 6078250, at *6.

defendant misrepresented that its muffin mix contained "Nothing Artificial" when, in fact, it contained artificial, synthetic substances.  Defendant argued that a reasonable consumer would not have been deceived because the product's ingredient list clearly disclosed the disputed ingredients and therefore the packaging was not misleading.  *Id.* at 2.  The court rejected Defendant's argument, holding that "the mere presence of an ingredient statement on the back of a product does not eliminate the possibility that reasonable consumers may be misled, and that the effect that an ingredient statement may have on a reasonable consumer's understanding of advertising and product labels involves a factual inquiry."  *Id.* at 3 (internal citation and quotation marks omitted); *see also Robertson v. Conopco, Inc.*, 2:15-cv-04006-MJW (W.D. Mo. Sept. 26, 2016) (Doc. 36 at 10) ("reasonable consumers could still be deceived or misled by certain products despite their having an ingredient list on the package."); *Murphy*, 503 S.W.3d at 312-13 ("The FDA does not require an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception. . . . While the presence of an ingredient list may be relevant to [Defendant's] defense at trial, the 'ingredient list' defense cannot, as a matter of law, defeat an MMPA claim.").

Notwithstanding the weight of authority to the contrary, Defendant relies primarily on two non-binding decisions:  *Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016) and *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 5886886, at *1 (N.D. Cal. Oct. 7, 2016).  These cases are easily distinguished. In *Ebner*, the plaintiff incorrectly alleged that certain *inaccessible* product in a container constituted slack-fill. *Ebner*, 838 F.3d at 967-68.  Yet "[t]his cannot constitute 'slack fill' because under the

plain language of the statute, slack fill means the portion of the container *without* product, *i.e.*, empty space." *Id; see also Arcala v. Golden Grain Company,* No. CGC-16-555084 at 2 (Ca. Super. Ct. Apr. 5. 2017), attached as Exhibit A ("*Ebner v. Fresh, Inc.* . . . is not a slack fill case."). Accordingly, *Ebner* has no bearing on what constitutes deception in the instant case, where the Plaintiff asserts that the Products contain approximately 45% slack-fill.

Equally unavailing is *Bush,* a California case that concerned slack-filled containers of cookies. Unlike its federal counterpart at issue in this case, California's slack-fill regulation (Cal. Bus. & Prof. Code § 12606.2) defines "nonfunctional slack-fill" as "the empty space in a package that is filled to substantially less than its capacity[.]" In contrast, 21 C.F.R. 100.100 defines "nonfunctional slack-fill" as "the empty space in a package that is filled to less than its capacity," and conspicuously omits the requirement that the empty space be "substantial."[6] Moreover, "*Bush* directly conflicts with the FDA's guidance on whether accurate statements regard[ing] net weight on a package label are sufficient to evade liability under slack-fill laws. Indeed, the issue was not actually handled in *Bush* because the argument was raised of the first time in opposition, and thus the court deemed the argument waived." *Arcala,* Exh. A, at 2-3. Finally, *Bush* involved snack containers with some, undefined amount of "slack-fill at the top." 2016 WL 5886886, at *3. This is vastly different than here, where Defendant's Products are almost half empty.[7]

---

[6]Although Plaintiff is not required to show that the slack-fill is substantial, as alleged and depicted, it *is* substantial. The inclusion of approximately 45% non-functional empty space in the Products is indefensible under any slack-fill standard.
[7] Defendant also cites *Fermin v. Pfizer Inc.,* No. 15 CV 2133 (SJ) (ST), 2016 WL 6208291, at *1 (E.D.N.Y. Oct. 18, 2016), which is wholly irrelevant because the products

### 3.    Consumers Are Not Charged with Manipulating Defendant's Products to Determine if They Contain Slack-Fill

Defendant erroneously attempts to evade its burden to lawfully package its Products by seemingly requiring consumers to manipulate the Products' packaging to divine the amount of slack-fill based on, for example, the "maraca-like sound and feel of candy moving around in the box."  Motion at 6.  Such manipulation and rank speculation not only fail to relieve Defendant from slack-fill liability, but this very argument was explicitly considered and rejected on a motion to dismiss in *Izquierdo*, 2016 WL 6459832, at *7:

> [Defendant] separately argues that the Candy box is not misleading because the consumer can plainly feel and hear the existence of empty space in the box upon reasonable inspection. Whether a reasonable consumer would think to shake, squeeze, or manipulate the Candy box, and whether that reasonable consumer would actually be able to feel the existence of slack-fill, are questions of fact that are inappropriate for resolution at the motion to dismiss stage.[8]

The FDA also rejected the notion that a consumer is required to manipulate a package to ascertain an accurate visual estimate, finding that requiring a consumer to redistribute and assess a container's contents will not adequately assure that consumers will not be misled.  *See* 58 Fed. Reg. 64128.  Moreover, no amount of shaking or squeezing of the Products would inform consumers that they are approximately 45% under-filled.  Thus, even assuming that a consumer had knowledge that packages contain some empty space, that knowledge would not dispel the deception created by the amount of substantial, excessive slack-fill that is present in Defendant's Products.

---

at issue were containers of Advil, a pain-relief medicine, and the slack-fill regulation at issue in this case (21 C.F.R. 100.100) governs "food," not medicine.

[8] *See also Arcala,* Exh. A, at 2 ("Much of defendant's argument rests on facts regarding (i) functionality (ii) product descriptions on the package and (iii) what a consumer would think on picking up a package. But these facts are – of course – not cognizable on a demurrer, where I assume all the allegations of the complaint are true.").

### III.     DEFENDANT'S CONDUCT VIOLATES THE MMPA

### A.     Plaintiff Has Demonstrated that Defendant Violated the MMPA

The MMPA prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce[.]" § 407.020.1, RSMo.   The MMPA is interpreted broadly to promote its purpose to protect consumers. *Thornton*, 2016 WL 4073713, at *2.   As alleged, Plaintiff and similarly situated consumers purchased Defendant's Products, and suffered an ascertainable loss because they would not have purchased the Products, or would have paid less for them, had they known they included substantial non-functional slack-fill.   These facts are sufficient to overcome Defendant's Motion to Dismiss. *See, e.g.,* Order filed February 28, 2017 in *Nathanial Trentham v. Continental Mills, Inc.*, Case No. 16PH-CV01563 (Phelps Cty.) (denying defendant's motion to dismiss plaintiff's complaint, which alleges that defendant included unlawful slack-fill in its pancake mix products, in violation of the MMPA).

### 1.     Plaintiff Has Properly Pled Ascertainable Loss

"Missouri courts apply the 'benefit of the bargain' rule when determining if a plaintiff has suffered an ascertainable loss under the MMPA." *Thornton,* 2016 WL 4073713, at *3.   "Under the benefit of the bargain rule as applied to MMPA claims, Plaintiff need only allege that the actual value of the product as purchased was less than the value of the product as represented to state a claim for an ascertainable loss." *Id.* Here, Plaintiff has alleged that "Plaintiff and members of the Classes suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented."   FAC

¶¶ 54, 73. Specifically, Plaintiff contends that, based on the oversized Product containers—which were 45% empty—Plaintiff and Class members "believed they were purchasing more Product than was actually received." FAC ¶¶ 53, 69.[9] These allegations are more than sufficient to state an ascertainable loss under the MMPA.

In fact, a case Defendant cites and describes in its Motion—*Kelly v. Cape Cod Potato Chip Co.,* 81 F. Supp. 3d 754, 758 (W.D. Mo. 2015)—demonstrates that Plaintiff has sufficiently alleged an ascertainable loss. In *Kelly,* the plaintiff alleged that she purchased chips that were represented to be "natural" when in fact they contained synthetic preservatives. The court held that "Plaintiff's Petition, alleging that the Chips as purchased were worth less than as represented[,] sufficiently states that she has suffered an ascertainable loss under the MMPA at this stage of the litigation." *Id.*[10]

---

[9] Defendant cites a number of inapposite cases. For example, *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014) involved the overfilling of prescription eye drop medication, and claims by the plaintiff that she was forced to purchase more medication than she could use. However, the plaintiff never alleged that the defendant *misrepresented* that the goods at issue contained more product than what was received. Similarly unavailing are *Mikhlin v. Johnson & Johnson*, No. 4:14-CV-881 RLW, 2014 WL 6084004, at *3 (E.D. Mo. Nov. 13, 2014) and *In re Avandia Mktg. Sales Practices & Prod. Liab. Litig.*, 639 F. App'x 866, 867 (3d Cir. 2016). Those cases concerned remote, hypothetical future injuries. Here, however, Plaintiff's ascertainable loss occurred at the moment of expenditure when she was denied the benefit of the bargain. Further, in *Mikhlin*, the plaintiffs received precisely what they expected to receive, as well as failed to allege that the products (baby powder) did not perform the "full anticipated benefit of the bargain," and thus failed to allege an ascertainable loss. 2014 WL 6084004, at *3. In addition, *Grawitch v. Charter Commc'ns, Inc.*, 750 F.3d 956, 960 (8th Cir. 2014) is inapposite because, in that case, plaintiffs had received an internet service upgrade for free, and therefore suffered no ascertainable loss when they were unable to utilize that free upgrade. *Spera v. Samsung Elecs. Am., Inc.*, No. 2:12-CV-05412 WJM MF, 2014 WL 1334256, at *6 (D.N.J. Apr. 2, 2014) is easily distinguished as the court applied an irrelevant New Jersey precedent and consumer protection statute.

[10] *See also Robertson*, 2:15-cv-04006-MJW at 9, attached as Exhibit B ("Plaintiff . . . has pled that, '[b]ecause the Products are not 'natural' as they are represented to be, the Products as sold were worth less than the Products as represented, and Plaintiff and class members paid more for them than they would have had the truth [been] known.'

Defendant's contention that "Plaintiff has not alleged that she received anything other than exactly what was represented on the Raisinets package—3.5 oz. of candy" (Motion at 11) entirely misconstrues the Complaint, the slack-fill laws, and the ascertainable loss requirement of the MMPA.  Indeed, Plaintiff's claims are predicated on the misrepresentations made by Defendant based on the Products' substantially oversized containers, which misled Plaintiff and the Classes to believe they were purchasing more candy than they in fact received—irrespective of any labeling statements.  That is because, as described in detail herein, labeling statements do not dispel the confusion caused by unlawfully slack-filled packaging.  Accordingly, Plaintiff has satisfied the ascertainable loss requirement of the MMPA.

Defendant's argument that Plaintiff failed to allege that "the Raisinets candy was more expensive, or that she paid more for the candy" is equally unavailing.  Motion at 10-11. As the court in *Kelly* made clear, such allegations are unnecessary.  *Kelly*, 81 F. Supp. 3d at 759 (allegations regarding a price premium and its value, reasons for a price premium, prices of competing products, and what product price should have been, are not required to adequately plead ascertainable loss).[11]

---

Accepting these allegations as true for purposes of the instant motion to dismiss, Plaintiff has pled a plausible theory of damages.") (internal citation omitted); *Thornton*, 2016 WL 4073713, at *3 ("Here, Plaintiff alleges she paid a premium for the Mix due to the 'Nothing Artificial' labeling and that her damages include the 'difference between the actual value of the product and the value of the product if it had been as represented.' . . . Based on these allegations . . .  the Court finds Plaintiff has alleged a plausible theory of damages."); *Plubell v. Merck & Co.*, 289 S.W.3d 707, 715 (Mo. App. W.D. 2009).

[11] *See also Robertson*, Exhibit B, at 10 ("Defendant further argues that Plaintiff has failed to plead how much 'more' she paid for the Products; what the 'actual value' of the Products is; what the value of the Products would have been if they 'had been as advertised; and whether a cheaper comparable product exists. . . . Similar arguments were rejected in <u>Kelly</u>. . . . The Court finds that here, Plaintiff has plausibly alleged an ascertainable loss, sufficient to survive a motion to dismiss[.]") (internal citations

## 2.    Defendant Wholly Ignores Plaintiff's Claim that Defendant Engaged in an Unfair Practice under the MMPA

In contending (erroneously) that no reasonable consumer would have been misled under the MMPA, Defendant argues exclusively that a consumer would not be "deceived," and ignores Plaintiff's allegations that Defendant engaged in an *unfair practice* under the MMPA. *See* FAC ¶¶ 13, 68-69. The MMPA prohibits unfair business practices, including, for example, "for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which (A) Violates state or federal law intended to protect the public; and (B) Presents a risk of, or causes substantial injury to consumers." Mo. Code Regs. Ann. tit. 15, § 60-8.090. Plaintiff has alleged that Defendant's conduct violates both federal and parallel Missouri statutes prohibiting unlawful slack-fill, and that Plaintiff and Class Members have suffered an ascertainable loss as a result of Defendant's conduct. *See* FAC ¶¶ 54, 73. As relevant here, "[p]roof of deception, fraud, or misrepresentation is *not required* to prove unfair practices as used in section 407.020.1." Mo. Code Regs. Ann. tit. 15, § 60-8.020 (emphasis added). Thus, although Plaintiff has demonstrated that Defendant's conduct deceived reasonable consumers, a showing of deception or misrepresentation is not required to state a claim that Defendant engaged in an unlawful practice in violation of the MMPA. *Id.*

---

omitted); *Thornton*, 2016 WL 4073713, at *4 ("It is not for the Court to determine on a motion to dismiss precisely what damages, if any, Plaintiff may be entitled to . . . '[w]hether Plaintiff can present evidence to show the amount of her damages is a question of fact to be tested by summary judgment or trial, not by a motion to dismiss.'") (internal citations omitted); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 4345446, at *2 (N.D. Cal. Sept. 15, 2011) ("Contrary to defendants' representations, Missouri does not require an exacting proof of loss in order for a loss to be considered ascertainable. Rather, a plaintiff must only establish that the product he purchased was 'worth less than the product as represented.' Numerous courts have found the ascertainable loss requirement satisfied despite uncertain or difficult to quantify damages.") (internal citation omitted).

### B.     Plaintiff Seeks Relief Under the MMPA and Missouri Common Law, Not Under Federal and State Slack-Fill Laws

As is demonstrated by the abundant case law cited herein, plaintiffs routinely and properly seek relief under state consumer protection laws based on a defendant's misleading conduct in packaging products with non-functional slack-fill. Contrary to Defendant's assertion, Plaintiff does not seek to enforce the FDA's slack-fill regulations, a fact that is aptly demonstrated by Plaintiff's Complaint, which asserts claims for violation of the MMPA and unjust enrichment. *See* FAC ¶¶ 67-80. Furthermore, unlike in the cases cited by Defendant, there is no prohibition on alleging violations of the MMPA based on a defendant's misleading and unlawful conduct of including non-functional slack-fill in consumer products. To the contrary, numerous courts have expressly sanctioned claims for violation of state consumer protection laws based on slack-fill violations. *See, e.g., Izquierdo*, 2016 WL 6459832, at *4 ("While Plaintiffs claim that [Defendant] violated federal regulations barring non-functional slack-fill, Plaintiffs do not seek relief under federal law. Rather, they argue that, in failing to comply with federal statutes and regulations, Defendants have violated state laws."); *Samet,* 2013 WL 3124647, at *4, *7 ("Plaintiffs are not suing under the FDCA, but under California state law" and "the FDCA does not prohibit separate state-law actions touching upon this field[.]"); *Arcala,* Exh. A, at 2 ("Nor is it relevant that there are no federal causes of action. A violation of federal law can be a predicate for the state [consumer protection] claims.").[12]

---

[12] Although Plaintiff does not seek to enforce FDA regulations, to the extent Defendant contends that the FDA has primary jurisdiction over all slack-fill-related claims, that argument has been repeatedly rejected. *See, e.g., Bautista v. CytoSport, Inc.*, No. 15-CV-9081 (CS), 2016 WL 7192109, at *3 (S.D.N.Y. Dec. 12, 2016) ("The FDA has clearly set forth what constitutes misleading nonfunctional slack fill and what does not, *see* 21

Defendant's assertion that the purported deficiency in Plaintiff's pleading cannot be cured by referencing the FDA's slack-fill regulations is equally unavailing. *See* Motion at 9-10. As stated above, Plaintiff alleges violations of the MMPA and unjust enrichment, but may look to the slack-fill regulations for guidance concerning Defendant's misleading and unlawful conduct. *See Foremost-McKesson, Inc.,* 488 S.W.2d at 197 ("The interpretation and construction of a statute by an agency charged with its administration is entitled to great weight."). Accordingly, Plaintiff does not need to assert that she was "aware of the FDA's slack-fill regulation" because her claims are grounded in Missouri's consumer protection law.[13] The FDA's slack-fill requirements, however, further demonstrate that Defendant's conduct is inherently misleading and violates the MMPA's prohibition on misleading representations and omissions.[14]

---

C.F.R. § 100.100, and therefore the primary jurisdiction doctrine does not apply."); *Samet*, 2013 WL 3124647, at *7 ("although Congress has given the FDA regulatory power over food labeling, it cannot be said that this amounts to exclusive jurisdiction over the entire area of food false advertising and deceptive labeling. While nutrition labeling requires a certain level of uniformity, the FDCA does not prohibit separate state-law actions touching upon this field, so long as they do not require more than the FDCA and accompanying regulations."). Similarly, if Defendant contends that Plaintiff's slack-fill claims are preempted by federal law, that argument has also been repeatedly rejected. *See, e.g., Izquierdo,* 2016 WL 6459832, at *4 ("Plaintiffs' state-law claims are not preempted by federal law" and "preemption is an affirmative defense and the burden of proof lies with the party propounding it."); *Samet,* 2013 WL 3124647, at *6 (slack-fill claims not preempted where plaintiff alleged that products did not comply with FDCA requirements); *Ivie,* 2013 WL 685372, at *11 (slack-fill claims not preempted where plaintiff "does not ask the court to require anything different than the FDA requirements"); *Hendricks,* 30 F. Supp. 3d at 928.

[13] It is absurd to suggest that for a consumer to be unlawfully deceived by Defendant's slack-filling practices, that consumer must first be "aware of"—and even "rely[] on compliance with"—the specific federal and state laws violated by Defendant's conduct. Motion at 9. The MMPA and common sense impose no such obligation on consumers.

[14] As explained in section III(A)(2), to assert an unfair practice under the MMPA (*see, e.g.,* Mo. Code Regs. Ann. tit. 15, § 60-8.090), Plaintiff must allege the applicable federal and state laws that Defendant violates, which is precisely what Plaintiff has done.

### C.    Affirmative Defenses Do Not Absolve Defendant's Conduct

Immediately after arguing that Plaintiff cannot employ the FDA's slack-fill regulations as the basis for her claims, Defendant seeks to rely on an FDA safe-harbor to justify its conduct.   *See* Motion at 13-14 (claiming that the "Raisinets package is unquestionably designed to also serve a convenience purpose, via a dispenser tab on the side of the box").   This bare assertion must be disregarded on a motion to dismiss, where Plaintiff has not had the opportunity to evaluate or refute Defendant's claim.  *Murphy,* 503 S.W.3d at 312 ("The parties should have been allowed to proceed with discovery and allow these fact questions to be resolved by a motion for summary judgment, if appropriate, or by a jury, not by a motion to dismiss" (citing *Chochorowski v. Home Depot U.S.A.*, *Inc.,* 295 S.W.3d 194, 199 (Mo. Ct. App. 2009)).

In any event, Defendant has not and cannot show how a dispenser tab justifies the inclusion of approximately 45% empty space in the product packaging.  Defendant bears the burden to prove compliance with the enumerated safe-harbor provisions.  *See Kline v. Iovate Health Sciences U.S.A.,* 3:15-cv-02387-L-WVG (S.D. Cal. Mar. 27, 2017) (Doc. 25 at 4-5) (rejecting Defendant's argument that "Plaintiffs failed to sufficiently allege that the slack-fill contained in the packaging is nonfunctional," and holding that "*Defendant has not established it is entitled to one or more safe harbors contained in either* § C.F.R 100.100 or [California's equivalent slack-fill law]." (emphasis added); *see also* 58 Fed. Reg. 64130 ("*[M]anufacturers* . . . should be prepared to demonstrate that the level of fill is appropriate for the particular product, and that package size cannot be further reduced.") (emphasis added).[15]  Otherwise, "[r]equiring a plaintiff to rule out every

---

[15] Similarly, "it is incumbent on the manufacturer . . . to demonstrate that the slack-fill in their packages does not exceed that which is necessary to perform a function for the

possible lawful explanation for the conduct he challenges would invert the principle that

the 'complaint is construed most favorably to the nonmoving party,' and would impose

the sort of 'probability requirement' at the pleading stage which *Iqbal* and *Twombly*

explicitly reject."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 597 (8th Cir. 2009)

(internal citations omitted).[16]

Furthermore, Plaintiff has more than adequately alleged that Defendant

intentionally included non-functional slack-fill in the Products to mislead consumers, and

for no other reason that would be subject to a safe-harbor defense.  *See* FAC ¶¶ 26-51;

*see also Waldman,* 714 F. Supp. 2d at 404 (denying motion to dismiss slack-fill and

unjust enrichment claims where "the Complaint alleges that Defendant included the slack

fill 'to mislead the consumer,' and that the packaging 'is geared to making the customer

believe that he/she is buying more of the product.'").[17]

---

food." *Id.* at 64131; *Arcala,* Exh. A, at 2 ("[D]efendant argued that the complaint was
insufficiently detailed . . . but also agreed that the so-called safe harbor factors, which
address these reasons, were issues as to which the defense would have the burden at
trial."); *cf. Murphy*, 503 S.W.3d at 313 ("Furthermore, the manufacturer, not the
consumer, is in the superior position to know and understand the ingredients in its
product and whether the ingredients comport with its packaging.").

[16] Defendant's own argument underscores precisely why Defendant, who possesses the
relevant information, bears the burden to prove compliance with the enumerated safe-
harbor provisions:  "A consumer would not know, for example, that the empty space was
there because of 'protection of contents,' 'requirements of the machines' that
manufacture or box the product, 'product settling' occurring in shipping, or 'inability to
increase level of fill or to further reduce the size of the package.'"  Motion at 9.  Nor does
Plaintiff allege, as Defendant incorrectly posits, that Plaintiff would no longer be
deceived were Defendant able to establish a safe-harbor.  *Id.*  Whether Defendant can
establish a safe harbor does not alter the deceptive nature of its conduct.

[17] Defendant cites *Bautista,* 2016 WL 7192109, at *4 and *Bush,* 2016 WL 7324990, at *4
in contending that Plaintiff makes only "conclusory allegations that none of [the]
functionality factors applies."  Motion at 13.  However, in both of those non-binding
cases, the court held that the complaint's single, conclusory allegation that none of the
safe-harbor provisions applied was insufficient to satisfy the federal pleading standard.
Here, Plaintiff's Complaint contains twenty-five paragraphs spanning four pages (FAC ¶¶

**D.      Plaintiff's Unjust Enrichment Claim Should Not Be Dismissed**

Defendant's only argument as to why Plaintiff's unjust enrichment claim should be dismissed is that it is derivative of Plaintiff's MMPA claim.  *See* Motion at 14. Because Plaintiff's MMPA claim survives for all the reasons set forth herein, so too does the unjust enrichment claim. Plaintiff may also pursue alternative theories at the pleading stage, which Plaintiff has properly done.  *See Thornton*, 2016 WL 4073713, at *4.

**E.      Plaintiff Has Standing to Seek Injunctive Relief**

The MMPA expressly permits a plaintiff to seek an injunctive remedy.   § 407.025.2, RSMo. ("In any action brought pursuant to this section, the court may in its discretion order, in addition to damages, injunction or other equitable relief . . . .").  In addition, "the MMPA broadly prohibits false, fraudulent or deceptive merchandising practices and affords our trial courts remedial measures (i.e., damages, injunctions, equitable relief, and attorney's fees), designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri citizens." *Arcese v. Daniel Schmitt & Co.*, 504 S.W.3d 772, 789 (Mo. Ct. App. 2016). Accordingly, the MMPA expressly confers standing on Plaintiff to seek an injunctive remedy, in part to protect other Missouri citizens, and to deter future unlawful conduct by Defendant.  This is true irrespective of whether Plaintiff has knowledge of the slack-filled contents of Defendant's Products.[18]  *See, e.g., Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("To hold otherwise would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have

---

26-51) of highly specific claims addressing the safe-harbor provisions inapplicability, as well as concerning "comparisons to similar products," which the *Bautista* court suggested would have remedied the pleading deficiency in that case.  2016 WL 7192109, at *5.

[18] Plaintiff also has alleged that she would "likely purchase the Products in the future if the Products complied with the applicable laws."  FAC ¶ 55.

been cheated. . . . An injunction in connection with a class action is designed to afford protection of future consumers from the same fraud. It does this by permitting the plaintiff to sue on their behalf."); *Chester v. TJX Companies, Inc.*, No. 515CV01437ODWDTB, 2016 WL 4414768, at *7–8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.' The Court . . . refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again . . . ").

Finally, Defendant appears to conflate a prospective class certification issue with a standing requirement. To the extent Defendant contends that Plaintiff is not an adequate representative for an injunctive claim, this issue is properly resolved at certification, not on a motion to dismiss. *See Leiner v. Johnson & Johnson Consumer Companies, Inc.*, No. 15 C 5876, 2016 WL 128098, at *1 (N.D. Ill. Jan. 12, 2016) ("[w]hether plaintiff is an appropriate class representative with respect to some or all of these claims is an issue properly decided after discovery and briefing on class certification."); *Brown v. Swagway, LLC*, No. 3:15-CV-588 JVB, 2017 WL 899949, at *3 (N.D. Ind. Mar. 7, 2017) (rejecting argument that Plaintiff lacks standing to pursue injunctive relief where plaintiff "has not alleged that he is likely to purchase [the product] again" because "class certification issues are logically antecedent to the standing issues."); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574 (S.D.N.Y. 2012).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

Date: April 21, 2017                    Respectfully submitted,

                                        By:_____/s/ David L. Steelman_____
                                        David L. Steelman, #27334MO
                                        Stephen F. Gaunt #33183
                                        901 N. Pine Street, Ste. 110
                                        Rolla, MO 65402
                                        Telephone: 573-341-8336
                                        Fax: 573-341-8548
                                        dsteelman@steelmanandgaunt.com
                                        sgaunt@steelmanandgaunt.com


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of April, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.


/s/   David L. Steelman_____