UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LAHONEE HAWKINS, individually and<br>on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NESTLE U.S.A. INC.,<br><br>Defendant. | )<br>)<br>)<br>) Case No.: 4:17CV205 HEA<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss. [Doc. No. 24]. The motion is fully briefed. For the reasons set forth below, the Motion is denied.

Defendant moves to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

### Facts and Background[1]

---

[1] For purposes of deciding the motion to dismiss for failure to state a claim, the Court accepts the factual allegations contained in the Amended Complaint as true. *Eckert v. Titan Tire Corp.* 514 F.3d 801, 806 (8th Cir. 2008). The Court may also consider documents attached to, or materials that are necessarily embraced by, the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotations and citations omitted). The Amended Complaint includes allegations about markings on the candy boxes at issue and includes pictures of the front of the boxes. This recitation of facts, however, is set forth for the purposes of this motion only and in no way relieves the parties of the necessary proof thereof in later proceedings.

Defendant manufactures Raisonets candy. The products are regularly sold at grocery stores, convenience stores, and other food retail outlets throughout Missouri and the rest of the United States. Plaintiff bought an opaque, non-pliable, cardboard box of Raisonets for about $1.59 apiece at a Walgreens store in Rolla, Missouri, for his personal, family, or household purposes. His lawsuit focuses on Defendant's packaging of the candies.

Consumers spend an average of 13 seconds making an in-store purchasing decision. The decision is heavily dependent on a product's packaging, in particular, the package dimensions. When faced with a large box and a smaller box, both containing the same amount of product, a consumer is more likely to choose the larger one, thinking it is a better value.

The dimensions of a Raisonets box are $3\frac{1}{8}''$ x $^{11}\!/16''$ x 6 $3\!/16''$.  The front of the box includes the description, "California Raisins covered in chocolate."  The front of the box also states: "NET WEIGHT 3.5 OZ (99.2 g)"; "190 CALORIES"; "5 g SAT FAT"; "15 mg SODIUM"; and "28 g SUGARS" per ¼ cup.  About 45% of each box has "slack filled," or empty, space.

Plaintiff alleges that she "attached importance" to the "size" of the Raisonets boxes, and was misled to believe that she was "purchasing more Product than was actually received." She alleges that boxes are "uniformly under-filled" or "'slack-filled,'"; the slack-filled space serves no purpose; and had she known the boxes

were "substantially slack-filled," she would not have purchased the products or would have purchased them on different terms. She alleges that she "suffered an ascertainable loss as a result of Defendant's unlawful conduct because the actual value of the Products as purchased was less than the value of the Products as represented." Plaintiff alleges that she "would...likely purchase the Products in the future if the Products complied with applicable laws."

Plaintiff filed this lawsuit as a putative class action. In Count I, she claims a violation of the Missouri Merchandising Practices Act (MMPA) for a Missouri Consumer Subclass, and she requests injunctive relief and damages under the statute. Count II is a claim for unjust enrichment brought on behalf of All Classes (class members in all states who purchased the products), in which Plaintiff requests restitution or disgorgement of Defendant's economic enrichment.

## Discussion

Defendant argues that Count I must be dismissed because Plaintiff fails to state a claim under the MMPA and has no standing to seek injunctive relief. Defendant also argues that argues that Count II must be dismissed because it is derivative of her legally insufficient MMPA claim.

## Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A complaint is plausible if its "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678). A court must "'draw on its judicial experience and common sense,' " and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir. 2010) (quoting *Iqbal,* 556 U.S. at 679).

When considering a Defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the Court must first "distinguish between a 'facial attack' and a 'factual attack' " on the Court's jurisdiction. *Osborne v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When a 12(b)(1) motion makes a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal citations omitted). On the other hand, a factual attack requires the Court to consider "matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal citations omitted). Defendant's motion in this matter represents a facial attack on the Court's jurisdiction, in that it challenges the legal sufficiency of the Plaintiff's

complaint to support the Court's jurisdiction. Therefore, the Court will accept all of Plaintiff's factual claims as true and construe the allegations in Plaintiff's favor. *Kulkay*, 847 F.3d at 641.

## Count I—MMPA claim

The elements of a claim under the MMPA are: (1) the purchase of goods or services, (2) primarily for personal or household purposes; and (3) an ascertainable loss of money or property, (4) as a result of, or caused by, the use or employment by another person of a method, act, or practice declared unlawful under the MMPA. §§ 407.020 and 407.025.1. *See also Murphy v. Stonewall Kitchen, LLC,* 503 S.W.3d 308, 311 (Mo. App. 2016); and Mo. Approved Instructions (Civil) 39.01 (7th ed.).

Defendant argues that the MMPA count must be dismissed because Plaintiff's allegations concerning unlawful practice and ascertainable loss are not plausible. For the reasons discussed below, the Court concludes that the allegations are sufficient to state a claim.

## Allegation of an unlawful practice

The Missouri Supreme Court has characterized the MMPA as "'paternalistic legislation designed to protect those that could not otherwise protect themselves.'" *High Life Sales Co. v. Brown–Forman, Corp.,* 823 S.W.2d 493, 498 (Mo. 1992) (*quoting Electrical and Magneto Service Co. v. AMBAC Intern'l Corp.,* 941 F.2d

660, 663 (8th Cir. 1991)). *See also Huch v. Charter Communications, Inc.*, 290

S.W.3d 721, 725 (Mo. 2009) (en banc) (noting that the legislature enacted the

MMPA to "regulate the marketplace to the advantage of those who may fall victim

to unfair business practices"). As such, the law is very broadly written. Section

407.020(1) declares and describes unlawful practices as follows:

> The act, use or employment by any person of any deception, fraud, false
> pretense, false promise, misrepresentation, unfair practice or the
> concealment, suppression, or omission of any material fact in connection
> with the sale or advertisement of any merchandise in trade or commerce ...
> in or from the State of Missouri, is declared to be an unlawful practice.

*See also* 34 Mo. Practice Personal Injury and Torts Handbook § 29:2, "Elements of

the action" (2016 ed.) ("The prohibitions of V.A.M.S. § 407.020 are construed

broadly to reach any deception or unfair practice[.]") (and citations therein).

The focus of the statutory scheme is on the defendant's conduct. "A consumer's

reliance on an unlawful practice is not required under the MMPA." *Murphy*, 503

S.W.3d at 311 (citing *Hess v. Chase Manhattan Bank, USA, N.A.,* 220 S.W.3d 758,

774 (Mo. 2007) (en banc)). Ultimately, the MMPA requires courts to make case-

by-case determinations of whether a defendant's conduct violates principles of fair

dealing. *Huch v. Charter Commc'ns, Inc.,* 290 S.W.3d 721, 724 (Mo. 2009) (*en

banc*).

"[I]n order to prevent evasion by overly meticulous definitions," the

statutory scheme does not provide definitions of any particular unlawful practices.

*Clement v. St. Charles Nissan, Inc.,* 103 S.W.3d 898, 900 (Mo. App. 2003) (citing

*State ex rel. Webster v. Areaco Inv. Co.,* 756 S.W.2d 633, 635 (Mo. App. 1988)).

The Missouri Supreme Court explained in *Ports Petroleum Co. of Ohio v. Nixon*

that absent statutory definitions, it would "consider[ ] the plain and ordinary

meaning of the words themselves,...which," in the case of "unfair practice" were

"unrestricted, all-encompassing and exceedingly broad." 37 S.W.3d 237, 240 (Mo.

2001). Accordingly, "[f]or better or worse, the literal words cover every practice

imaginable and every unfairness to whatever degree." *Id.*

     The MMPA does grant the Missouri Attorney General authority to

promulgate rules, and the rules that have been promulgated under the MMPA are

instructive here. *See United Pharmacal Co. of Mo. v. Mo. Bd. of Pharmacy,* 159

S.W.3d 361, 365 (Mo. 2005) (en banc) (properly promulgated rules have the force

and effect of law). For example, under 15 C.S.R. § 60–9.020(1), "deception" is

defined as "any method, act, use, practice, advertisement or solicitation that has the

tendency or capacity to mislead, deceive or cheat, or that tends to create a false

impression." Under 15 C.S.R. § 60–9.030(1), "Deceptive Format," "[i]t is

deception for any person in an advertisement or sales presentation to use any

format which because of its overall appearance has the tendency or capacity to

mislead consumers." Another rule, 15 C.S.R. § 60–9.070(1), defines

"misrepresentation" as "an assertion not in accord with the facts[.]" The rules

further provide that reliance and intent are not elements that must be proven to establish deception or misrepresentation for purposes of § 407.020(1). § 60–9.020(2) and § 60–9.070(2). The regulation concerning "unfair practice[s]" provides that proof of deception, fraud, or misrepresentation is not required. 15 C.S.R. § 60–8.020(2).

At the motion to dismiss stage, the Court's focus is on what is alleged in a plaintiff's complaint. Plaintiff alleges that Defendant's packaging, containing slack-filled space, misled her to believe that the boxes contained more candy than they actually did, and that Defendant's conduct constituted the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and the concealment, suppression, or omission of any material facts in connection with the sale of advertisement of their products, in violation of the MMPA. She also alleges that the actual value of the product he purchased was less than the value of the product as represented by the packaging. More specifically, Plaintiff alleges that consumers spend an average of 13 seconds making an in-store purchasing decision. The decision is heavily dependent on a product's packaging, in particular, the package dimensions. When given a choice, consumers are more likely to choose larger boxes, thinking they are a better value. Defendant makes its candy boxes from opaque, non-pliable cardboard. Defendant fills the boxes such that 45% of a box of Raisonets is empty. The empty, or slack-

filled, space in the boxes serves no purpose, such as protection of the contents. The slack-filled space is not attributable to settling of the contents. Nothing prevents Defendant from placing more candy in the boxes, or reducing the size of the boxes.

As discussed above, consumer protection is paramount under the MMPA and its prohibitions are construed broadly. The Missouri Supreme Court has explained that an "unfair practice" under the MMPA covers every unfair practice imaginable and every unfairness, to whatever degree. Practices made unlawful by the act are also broadly defined by regulation, such as deception, which is any practice having the tendency or capacity to mislead, deceive, cheat, or create a false impression; or misrepresentation, which is an assertion not in accord with the facts. A plaintiff need not even allege or prove reliance on an unlawful practice to state a claim under the act. Defendant's candy boxes are opaque and non-pliable, and a reasonable consumer could conclude that the size of a box suggests the amount of candy in it. Larger packages are attractive to consumers, and consumers tend to make their purchasing decision in 13 seconds. Yet there is 45% non-functional, slack-filled space in a Raisonets's box. Plaintiff has plausibly alleged, at minimum, that the packaging unfairly suggests the boxes contain more product than they actually do, or tends to or has the capacity to mislead consumers or to create a false impression, which is sufficient for purposes of alleging an unlawful practice under the MMPA. The Court cannot conclude as a matter of law and at

this stage of the litigation that the packaging is not misleading. *See, e.g., Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312–13 (Mo. App. 2016) (declining to decide how a "reasonable consumer" would perceive the term "all natural" at an early stage of litigation, and holding that the question is appropriately addressed on a motion for summary judgment or trial); and *Thornton v. Pinnacle Foods Grp. LLC*, 2016 WL 4073713, at *3 n.3 (E.D. Mo. Aug. 1, 2016) ("Whether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss.").[2]

The Court's conclusion that Plaintiff has plausibly alleged an unlawful practice is reinforced by Bratton's allegations concerning a Federal regulation that prohibits slack-fill in packaging, subject to six exceptions which Plaintiff alleges do not apply here.[3] Defendant argues that to make out a claim under the MMPA,

---

[2]     *See also In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Practices Litig.*, 2016 WL 6078250, at *6 (D.D.C. 2016) ("The size of a package signals to the consumer vital information about a product and is as influential in affecting a customer's choices as an explicit message on its surface. Moreover, in this case, the size of McCormick's [pepper] containers is exactly what makes them misleading, because consumers cannot see the amount of their contents.") (internal quotation omitted); and *Hobby Indus. Assn. of Am., Inc. v. Younger*, 101 Cal. App. 3d 358, 367–68 (Ct. App. 1980) ("Clear disclosures on labels, scale drawings, and other informative matter may not counteract the impression created by the size of the package, and in this sense slack fill can be viewed as inherently deceptive.")

[3]     Specifically, in the Amended Complaint, Plaintiff cites 21 C.F.R. § 100.100, a Federal regulation which provides: "A container that does not allow a consumer to fully view its contents shall be considered to be filled so as to be misleading [in violation of 21 U.S.C. § 403(d) of the Federal Food, Drug and Cosmetics Act] if it contains nonfunctional slack-fill. Slack–fill is the difference between the actual capacity of a container and the volume of product contained therein." 21 C.F.R. § 100.100(a).

The regulation then provides six exceptions to the prohibition against slack-fill: (1) protection of the package's contents; (2) the requirements of the machinery used to enclose the

Plaintiff must allege more than mere violation of Federal slack-fill rules. Regardless of whether Plaintiff may prove her MMPA claim by pointing to such violation, an issue that has not been fully briefed by both parties at this time, the existence of the Federal prohibition against slack-fill supports the reasonableness of a consumer's belief that the package of candy she purchases will not have 45% non-functional slack-fill.

Defendant argues that a reasonable consumer, upon picking up the Raisonets' container, would instantly realize that it is not filled to the brim: with each movement of the package, its contents noticeably and audibly "maraca-like rattle. No such allegations are in Defendant's complaint, which is the pleading that controls for purposes of Defendant's motion to dismiss.

Furthermore, to the extent that Defendant's statements are couched as facts, they are not facts of which the Court may take judicial notice. Under Federal Rule of Evidence 201(b), the Court may take judicial notice of a "fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Such facts "can

---

contents in the package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function, such as playing a role in preparation of a food, where clearly communicated to consumers; (5) the package is a reusable container which has a part in the preparation of the food, and has a significant and independent value; or (6) the inability to increase the level of fill or reduce the packaging, such as to accommodate required food labeling or to accommodate tamper-resistant devices.

As noted above, Plaintiff alleges that the six exceptions do not apply to Defendant's packaging.

include[,]" for example, "well-established scientific theories and principles." *Williams v. Employers Mut. Cas. Co.*, 845 F.3d 891, 904 (8th Cir. 2017) (citation omitted) (holding that in deciding a motion for judgment on the pleadings, the district court did not abuse its discretion by taking judicial notice of fact that the element radium is a solid that emits alpha particles; such a fact was not subject to reasonable dispute). Defendant points to no authority demonstrating that its statements are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, nor is the Court aware of such authority.

Moreover, Defendant's statement that a reasonable consumer would instantly realize upon picking up a box that it is not filled to the brim because the contents rattle does not go to what Plaintiff has alleged. Plaintiff has alleged that the boxes are substantially empty, have substantial, non-functional slack-fill, and have an amount of slack-fill that cannot be justified; that industry-standard machines are capable of filling and enclosing the boxes with far less slack-fill; and that the level of fill can certainly be increased. She does not allege that the boxes should be filled to the brim, let alone that the packaging is misleading because the contents do not rattle. Nonetheless, even in the context of what Plaintiff has alleged, whether a reasonable consumer would notice rattling in the 13–second course of making the purchasing decision and what a consumer would make of it,

let alone instantly conclude the boxers are as much as much as 45% slack-filled, are questions of fact.

In addition, Defendant's statement that "some" empty space in the boxes is related to "efficient manufacturing and distribution" is at odds with Plaintiff's allegation that the slack-filled space in the boxes takes up as much as 45% of the box's space, that the slack-filled space serves no purpose and is not related to the settling of the contents, and that nothing about the manufacturing process prevents Defendant from filling the boxes fuller. To the extent that Defendant disputes these allegations, such dispute cannot be resolved on a motion to dismiss.

Defendant further argues that the clear and accurate labeling on the packages—net weight, number of pieces of candy per serving, and number of servings per box—is fatal to Plaintiff's claim because it tells a consumer how much candy is in the box. The Missouri Court of Appeals recently rejected an analogous argument in *Murphy*. That case involved a consumer's claim under the MMPA against the manufacturer of a muffin mix that was labelled "all natural." 503 S.W.3d at 312–313. The package's ingredient label, placed there pursuant to federal law, disclosed that the product contained sodium acid pyrophosphate. The manufacturer argued that the label's ingredient disclosure entitled it to dismissal. But the court "expressly reject[ed] the notion that the 'ingredient list' defense asserted by [the defendant] defeat[ed] [the plaintiff's] claim as a matter of law." *Id.*

13

at 312. The court explained that an ingredient list is not required to be placed on packaging "so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misrepresentations and provide a shield from liability for that deception." *Id.* at 313 (citation omitted). The court further held that a reasonable consumer would expect that the ingredient list comported with the representations on the packaging, and that in any event, the manufacturer was in the superior position to know and understand the ingredients in the product, and whether they comported with the packaging. *Id.* The court held that the allegations were sufficient to survive a motion to dismiss.

The "all natural" package labelling in *Murphy* is analogous to the information suggested to consumers by the dimensions of Defendant's opaque, non-pliable cardboard boxes. As discussed above, the dimensions of the boxes can suggest to reasonable consumers how much candy is in them, and consumers tend to choose larger packages, thinking they are a better value. Consumers also tend to make their purchasing decision in about 13 seconds. Following the *Murphy* rationale, a reasonable consumer would expect the candy box's' labeling information to comport with the dimensions of the box and it is Defendant that is in the superior position to know whether the dimensions do. In other words, similar to the *Murphy* scenario, the question of whether a consumer would figure out, from the labeling information and in the 13 seconds spent making a purchasing decision,

that the box contained 45% slack-filled space rather than the amount suggested by the dimensions of the box goes to reasonableness, which is a question of fact. Moreover, Defendant's narrow focus and emphasis on the net weight, number of pieces of candy per serving, and servings per box, as printed on the boxes, overlooks that the Court must consider the plausibility of the complaint as a whole, not the plausibility of each individual allegation. *Zoltek,* 592 F.3d at 896 n.4. Defendant overlooks that the MMPA is both written and construed broadly to serve its purpose of consumer protection. *High Life Sales,* 823 S.W.3d at 498 and 34 Mo. Practice Personal Injury AND Torts Handbook § 29:2. Narrowly focusing on an aspect of the labeling does not serve the purpose of the MMPA.

Both parties cite a number of decisions, rendered by courts nationwide and involving other states' laws, in support of their respective arguments about the slack-fill. Extended discussion of the various cases cited by the parties would not be useful to the analysis, largely because it is Missouri law that controls in this case. The Missouri Supreme Court has also explained that courts must make case-by-case determinations of whether a defendant's conduct violates Missouri's consumer protection law. *Huch,* 290 S.W.3d at 724.

The *Murphy* case discussed above is a recent, analogous case decided under the MMPA by the Missouri Court of Appeals, which rejected the "ingredient label defense" and held that the question of a how a "reasonable consumer" would

perceive certain packaging information was a question appropriately addressed on a motion for summary judgment or trial, not a motion to dismiss. The issues in this case are controlled by Missouri law, which is at odds with the slack-fill cases Defendant cites.

Moreover, courts that have allowed slack-fill, consumer protection cases to proceed beyond the motion to dismiss stage tend to do so because reasonableness was at issue and could not be resolved short of summary judgment or trial. *See, e.g., Izquierdo v. Mondelez International, Inc.,* 2016 WL 6459832, *6–7 (S.D.N.Y. Oct. 26, 2016) (denying motion to dismiss a claim concerning slack-filled candy boxes; a reasonable consumer could be misled even if the candy box displayed the net weight and listed the number of pieces inside); *Thomas v. Costco Wholesale Corp.*, 2014 WL 1323192, at *9 (N.D. Cal. Mar. 31, 2014) (holding that where the plaintiff claimed that products she purchased were unjustifiably slack-filled and that she was misled, the plaintiff had adequately pled that a reasonable consumer could be deceived, and the claim could not be resolved at the motion to dismiss stage); and *Samet v. Procter & Gamble Co.*, 2013 WL 3124647, at *9 (N.D. Cal. June 18, 2013) (denying motion to dismiss where the plaintiffs alleged facts showing that they were deceived by the slack-filled potato chip and fruit snack packaging, and thought they were receiving more of the product than they actually did; even if a consumer would expect extra air in a bag of such snacks, "the

amount of slack-fill expected by the reasonable consumer is a debatable factual question that is inappropriate to resolve at the motion to dismiss stage").[9]

The Court concludes that the analysis consistent with Missouri law leads to the conclusion that Plaintiff has plausibly alleged a claim under the MMPA and that reasonableness is an issue of fact, which cannot be resolved on a motion to dismiss.

**Allegation of an ascertainable loss**

Defendant further argues that Plaintiff failed to allege ascertainable loss under the MMPA. This element is straightforward. Ascertainable loss involves "the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction." *Murphy*, 503 S.W.3d at 313 (citing *Schoenlein v. Routt Homes, Inc*., 260 S.W.3d 852, 854 (Mo. App. 2008)). Furthermore, the loss must be a result of the alleged unlawful practice. *Id.* (citing *Plubell v. Merck & Co.,* 289 S.W.3d 707, 714 (Mo. App. 2009)).

*Murphy* was a challenge under the MMPA to the labelling of a muffin mix as "all natural," notwithstanding that the mix had synthetic ingredients. The plaintiff alleged that the mix was worth less than the product as represented. The Missouri Court of Appeals held that the plaintiff stated an ascertainable loss under the benefit of the bargain rule. The court further concluded that the plaintiff had

adequately alleged the loss was the result of the allegedly deceptive labeling when he pled that consumers were interested in purchasing healthy food products without potentially harmful synthetic ingredients, and that the defendant had taken advantage of that desire by using the "all natural" label to entice consumers to pay a premium for the product. *See also Plubell*, 289 S.W.3d at 715 (the plaintiff alleged that a drug manufacturer violated the MMPA by failing to disclose and concealing the drug's serious safety risks; the court held that the plaintiff's allegation that the drug was worth less than as represented stated an ascertainable loss under the benefit-of-the-bargain rule).

Plaintiff's allegations of ascertainable loss are analogous to those held sufficient in *Murphy*. Plaintiff alleged that the boxes were opaque and that the size of the boxes led her to believe there was more candy in them than they actually contained. She alleged that the value of the products she purchased was less than the value of the products as represented by size of the boxes. She alleged that product purchasing decisions are heavily dependent on the packaging, and on the package dimensions in particular, and that consumers tend to choose a larger package over a smaller one, thinking it is a better value. Plaintiff has sufficiently alleged ascertainable loss for purposes of withstanding the motion to dismiss and that the alleged loss was the result of the packaging.

**Standing to pursue injunctive relief under Count I**

The MMPA expressly provides for injunctive relief, as well as damages and attorney fees, § 407.025.2, "not only to remedy violations..., but also to prospectively deter prohibited conduct and protect Missouri citizens," *Berry v. Volkswagen Grp. of Am., Inc.,* 397 S.W.3d 425, 433 (Mo. 2013) (en banc).

Defendant argues that whatever comes of Plaintiff's claim for damages under the MMPA, her claim for injunctive relief must be dismissed for lack of standing. According to Defendant, now that Plaintiff is aware of the slack-filled space in the boxes, she cannot plausibly claim that she will be subject to continuing injury, so injunctive relief would not affect her.

Article III of the United States Constitution grants federal courts limited jurisdiction to decide "cases and controversies." To satisfy this jurisdictional standing requirement, a plaintiff must establish (1) an injury in fact, which is (2) fairly traceable to the defendant's conduct, and which (3) will likely be redressed by a favorable decision. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181 (2000). To establish "injury in fact" for purposes of injunctive relief, a plaintiff must show that he "faces a threat of ongoing or future harm." *Park v. U.S. Forest Serv.,* 205 F.3d 1034, 1037 (8th Cir. 2000). Under the redressability prong, the plaintiff must demonstrate that he "personally would benefit in a tangible way from the court's intervention." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 104 n. 5 (1998).

Plaintiff has pled a threat of ongoing or future harm, which is fairly traceable to Defendant's conduct. Specifically, she alleges that the she was misled by the packaging to believe the boxes contained more product than they actually did, and suffered an ascertainable loss, and that had she known the boxes contained substantial slack-filled space she would not have purchased them or would have purchased them on different terms. She alleges that Defendant continues to sell slack-filled candy boxes, *i.e.,* the unlawful practice is ongoing.

Plaintiff has also pled that she would personally benefit in a tangible way from injunctive relief, by alleging that if Defendant changes its practices, she is likely to buy the products in the future, and that she seeks to be relieved from Defendant's unlawful practice by the issuance of injunctive relief.

Defendant places emphasis on Plaintiff's discovery of the slack-fill in the Raisonet box. But the fact that Plaintiff discovered Defendant's allegedly unlawful practice does not make the packaging less misleading, nor mean that the practice is not ongoing. Plaintiff need plead nothing more to survive a motion to dismiss a request for injunctive relief for lack of Article III standing. *See Whitmore v. Arkansas,* 495 U.S. 149, 158–59 (1990) (discussing *United States v. SCRAP,* 412 U.S. 669 (1973)) (acknowledging that even attenuated injuries or "thin" allegations are sufficient to confer Article III standing at the motion to dismiss stage); and *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 2016 WL 128098, at \*1

(N.D. Ill. Jan. 12, 2016) (cautioning that standing to pursue injunctive relief and entitlement to such relief are two separate concepts). *See also Chester v. TJX Companies, Inc.*, 2016 WL 4414768, at *8 (C.D. Cal. Aug. 18, 2016) ("It is inconceivable to think prospective relief in the false advertising context is bound by the rules of 'fool me once, shame on you; fool me twice shame on me.' The Court...refuses to find that, once a plaintiff has alleged that she was deceived, she likely will not voluntarily be deceived again—and thus no court can enjoin deceptive practices without ignoring Article III's standing requirements."); and *Ackerman v. Coca–Cola Co.*, 2013 WL 7044866, at *15 n.23 (E.D.N.Y. July 18, 2013) (where the defendants' allegedly deceptive advertising and labeling practices were ongoing, and the plaintiffs sought to be relieved from such practices in the future, the fact that the plaintiffs discovered the alleged deception years earlier did not mean the plaintiffs lacked Article III standing) (and collecting cases).

Defendant's motion to dismiss the request for injunctive relief is denied.

## Count II—Unjust enrichment

Plaintiff's unjust enrichment count is brought on behalf of a putative nationwide class. Plaintiff alleges that by purchasing the products, she and the putative class members conferred a benefit on Defendant in the form of the purchase price of the slack-filled products; Defendant knew of the benefit; Defendant appreciated the benefit because the sales generated revenue;

Defendant's acceptance and retention of the benefit is inequitable and unjust because it was obtained by Defendant's fraudulent and misleading representations and omissions; and equity cannot in good conscience permit Defendant to be economically enriched for such actions. Plaintiff further alleged, with respect to herself, that she purchased the products for about $1.49 in a Missouri Walgreens store.

Defendant argues that the count should be dismissed because the count is premised on the same facts as the MMPA count which fails to state a claim and so should be dismissed on the same basis.

There are three elements to a claim of unjust enrichment under Missouri law. First, a plaintiff must confer a benefit and enrich a defendant. Second, the enrichment must be at the expense of the plaintiff. Finally, the Court must determine that it would be unjust for the defendant to retain the benefit. *Miller v. Horn,* 254 S.W.3d 920, 924 (Mo. App. 2008). Enrichment is unjust when "a person retains the benefit and enjoys the benefit conferred upon him without paying its reasonable value." *Webcon Group, Inc. v. S.M. Properties, L.P.,* 1 S.W.3d 538, 542 (Mo. App. 1999). Plaintiff's pleading and the reasonable inferences drawn therefrom address each of the elements with sufficient specificity to state a claim for unjust enrichment under Missouri law. Plaintiff alleges that a benefit was conferred on Defendant in the form of payment of the purchase price for the slack-

filled products by her and the putative class members, and that it would be unjust to permit Defendant to retain the benefit in view of the packaging, which misled purchasers about the amount of product inside. Accordingly, the unjust enrichment claim is sufficiently pled under Missouri law.

As discussed in a preceding section, the Court has concluded that Plaintiff states a claim under the MMPA. It is generally permissible to pursue alternative theories at the pleading stage, and courts generally permit unjust enrichment claims to proceed alongside a properly-pled MMPA claim. *See, e.g., Murphy,* 503 S.W.3d at 314 (because the trial court's dismissal of an MMPA claim was reversed, the dismissal of the unjust enrichment claim, which was based on the same conduct, was also reversed); *Thornton,* 2016 WL 40373713, at *4 (denying motion to dismiss unjust enrichment claim, after concluding that the plaintiff had plausibly stated a claim under the MMPA).

Plaintiff has also alleged sufficient facts to demonstrate Article III standing to pursue the claim, in that she has alleged an injury in fact, which is fairly traceable to Defendant's conduct, and which will likely be redressed by a favorable decision. *Friends of the Earth,* 528 U.S. at 180–181.

For the foregoing reasons, Hershey's motion to dismiss Count II is denied.

## Conclusion

Based upon the foregoing analysis, Plaintiff's Amended Complaint satisfies the requirements of Rules 12(b)(6) and 12(b)(1).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 24]

is denied.

Dated this 7th day of February, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE